UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

FILED

NOV 20 1998

| | |
|---|---|
| AMERICAN CANOE ASSOCIATION, INC., )<br>)<br>      Plaintiff, )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>      Plaintiff/Intervenor, )<br>  v. )<br>)<br>MURPHY FARMS, INC. d/b/a )<br>MURPHY FAMILY FARMS, and )<br>D.M. FARMS OF ROSE HILL, L.L.C. )<br>)<br>      Defendants. )<br>_____) | Civil Action No.<br>7:98-CV-4F(1) |
| PROFESSIONAL PADDLESPORTS )<br>ASSOCIATION, )<br>)<br>      Plaintiff, )<br>)<br>  v. )<br>)<br>MURPHY FARMS, INC. d/b/a )<br>MURPHY FAMILY FARMS, and )<br>D.M. FARMS OF ROSE HILL, L.L.C. )<br>)<br>      Defendants. )<br>_____) | Civil Action No.<br>7:98-CV-19-F(1) |
| CONSERVATION COUNCIL OF NORTH )<br>CAROLINA )<br>)<br>      Plaintiff, )<br>)<br>  v. )<br>)<br>MURPHY FARMS, INC. d/b/a )<br>MURPHY FAMILY FARMS, and )<br>D.M. FARMS OF ROSE HILL, L.L.C. )<br>)<br>      Defendants. )<br>_____) | Civil Action No.<br>7:98-CV-209-F(1) |

**UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT
OF THE UNITED STATES OF AMERICA'S MOTION FOR LEAVE
TO FILE ITS COMPLAINT IN INTERVENTION**

## INTRODUCTION

The United States of America ("United States"), by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), hereby files this memorandum in support of its motion for leave to file its complaint in intervention. The United States' motion in intervention is predicated on Section 505(c)(2) of the Clean Water Act, 33 U.S.C. § 1365(c)(2), which affords the United States an opportunity to intervene as a matter of right in citizen suits.

The instant action is a consolidated citizens' suit brought by the American Canoe Association, Inc., the Professional Paddlesports Association, and the Conservation Council of North Carolina for injunctive relief and the assessment of civil penalties against defendants Murphy Farms, Inc. d/b/a Murphy Family Farms, and D.M. Farms of Rose Hill, L.L.C. (hereinafter "Defendants") for violations of the Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977 and the Water Quality Act of 1987 ("Clean Water Act"), 33 U.S.C. §§ 1251 et. seq. After extensive briefing and oral argument by the citizens and Defendants on a variety of issues, the Court on September 14, 1998, issued an order requesting that EPA and the State of North Carolina file amicus curiae briefs in the case. The Court's order states:

> The court desires to receive from the North Carolina Department of Environmental and Natural Resources and any other appropriate State entity, and from the Environmental Protection Agency, amicus curiae briefs addressing current efforts directed at Clean Water Act compliance by CAFO's, and the role the NPDES permit scheme will play. In

2

> addition, amici should address reports that the State has
> made changes in its permit issuance policy, should detail
> what those changes are, when they will become effective, to
> whom they will apply, and how they will be administered.

See Order dated September 14, 1998. EPA has reviewed the Court's invitation to EPA for its participation as an amicus curiae in this matter, and after due deliberation believes that the United States can most effectively participate as a party by intervening as a plaintiff. In making this determination, the United States has reviewed many of the briefs and pleadings filed in the instant matter, and has concluded that, while many issues have been raised, only a few of those issues actually require resolution by the Court. Hence, the claims alleged by the United States in its proposed complaint in intervention are narrow, simple, and straightforward.

The first claim for relief alleges that at least once in 1996 and in 1997 the Defendants discharged a "pollutant" without an NPDES permit. Because such discharges were not authorized by a duly-issued National Pollutant Discharge Elimination System ("NPDES") permit they are unpermitted discharges and as such violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). As of the date of the first discharge, if not earlier, the Defendants had a duty to apply for an NPDES permit as provided in the federal regulations, 40 C.F.R. § 122.21(a). It is the Defendants' failure to apply for an NPDES permit that the United States alleges as its second claim for relief.

For the reasons set forth below, intervention on the part of

3

the United States should be granted pursuant to Federal Rule of Civil Procedure 24, Section 505(c)(2) of the Clean Water Act, 33 U.S.C. § 1365(c)(2), and applicable case law, as the application for intervention is timely, the citizens groups have consented to the United States proposed intervention, and the Defendants can not show that the proposed complaint in intervention will delay or prejudice the adjudication of the rights of the original parties.

## ARGUMENT

I. <u>Intervention as a Matter of Right</u>

    A. <u>The Federal Rules of Civil Procedure and the Clean Water Act permit the United States the right to Intervene in this Citizens' Suit.</u>

Federal Rule of Civil Procedure 24(a)(1) provides: "Upon timely application anyone shall be permitted to intervene in an action . . . when a statute of the United States confers an unconditional right to intervene . . . [.]" Section 505(c)(2) of the Clean Water Act, 33 U.S.C. § 1365(c)(2), which applies to citizen suits, confers on the United States the unconditional right to intervene in this matter. Section 505(c)(2) states that "the Administrator [of EPA], if not a party, may intervene as a matter of right" in a civil action filed by a citizen group. 33 U.S.C. § 1365(c)(2); <u>See also</u> <u>Middlesex County Sewerage Authority v. Sea Clammers</u>, 453 U.S. 1, 7 n. 9, 101 S. Ct. 2615, 2620 (1980). Thus, the Clean Water Act has expressly conferred an unconditional right to intervene on the United States, and the

4

United States should be granted leave to intervene provided that the instant motion for intervention has been filed in a timely fashion. As discussed below, this motion has been brought in a timely fashion by the United States.

   B.  The Motion To Intervene Is Timely Filed.

The court's determination of timeliness is to be made "from all the circumstances." NAACP v. New York, 413 U.S. 345, 366 (1973). In Michigan Ass'n of Retarded Citizens v. Smith, 657 F.2d 102, 105 (6th Cir. 1981), the Court of Appeals elaborated on the circumstances applicable to determinations of timeliness:

> Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances. Among the other circumstances to be considered are these: (1) the purpose for which intervention is sought, (2) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case, (3) the prejudice to the original parties due to the proposed intervenor's failure after he knew of or reasonably should have known of his interest in the case promptly to apply for intervention, and (4) the existence of unusual circumstances militating against or in favor of intervention.

Id. (citations omitted). These factors have been reiterated in subsequent decisions. See, e.g., United States v. Kemper Money Market Fund, Inc., 704 F.2d 389, 391 (7th Cir. 1983). Courts have also considered the progress of the original suit at the time intervention is sought. See Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990).

The United States' Motion to Intervene is timely. The purpose of the United States' request to participate in this

5

matter is a product of this Court's invitation to the United States to provide input as an amicus curiae, and arises out of the United States' paramount interest in enforcing this nation's water pollution laws and ensuring that those laws are uniformly applied. Because the parties to this citizens' suit have raised several issues regarding the application of the federal NPDES program to concentrated animal feeding operations like Murphy Farms, protection of the public's interest in ensuring compliance with the NPDES program is best served by the United States direct involvement in this matter as a plaintiff.[1]

Second, only approximately eleven months have passed since this case was filed, and only approximately two months since the Court invited the United States' participation in the instant case. During this period, EPA has been actively coordinating with the State on the appropriate implementation and enforcement of the provisions of their federally-approved NPDES program to require concentrated animal feeding operations that have had

---

[1] At least one federal court has stated that "[t]imeliness . . . does not depend solely upon the amount of time that has elapsed since the institution of a lawsuit but, instead, depends more upon the readiness of the case for trial." Alexander v. Hall, 64 F.R.D. 152, 157 (D.S.C. 1974) (emphasis added). Since this case will not be ready for trial for some months, intervention by the United States at this time will not significantly delay the proceedings or prejudice the rights of the parties. Id. at 157. The absence of any prejudice here is a significant factor which weighs in favor of granting leave to the United States to intervene in this case. See South v. Rowe, 759 F.2d 610 (7th Cir. 1985) (enumerating factors, including prejudice to the original parties, to be considered in determining the timeliness of intervention).

6

unpermitted discharges, such as Murphy Farms, to apply for an NPDES permit. Ever since the Affidavit of Preston Howard, dated September 9, 1998, was filed with the Court, the United States has been continuing in its efforts to reach a coordinated approach with the State. Consequently, it was only while continuing with those efforts, the United States realizes that it must move forward in applying the NPDES program to Murphy Farms in this enforcement action.

Third, discovery has not yet been completed by either of the parties. The deadline for discovery is still several months away, and the United States understands that the parties have made progress in their discovery efforts. To ensure that the parties continue to cost-effectively use their resources, the United States is committed to working with the parties to ensure that any discovery undertaken by the United States is not duplicative of discovery already taken by the parties. Nonetheless, the United States does believe that a period of limited discovery beyond that already provided by the Court may be necessary.

In sum, the United States' motion to intervene is timely and should be granted as the citizens' groups have consented to the instant motion and the Defendants can not show at this stage of the litigation that they will be prejudiced.

II. The United States' First Claim for Relief

The United States' first claim for relief is predicated on the plain language of the statute and immutable facts. Section

7

301(a) of the Clean Water Act prohibits the discharge of any pollutant from a point source into waters of the United States except in compliance with certain sections of the Act, including Section 402, 33 U.S.C. § 1342. 33 U.S.C. § 1311(a). Section 402 of the Act authorizes the EPA, or delegated States, to issue NPDES permits allowing for the discharge of pollutants into navigable waters. 33 U.S.C. § 1342.

The United States alleges, and it can not be disputed, that on at least two separate occasions wastewater was discharged from the defendants' concentrated animal feeding operation to waters of the United States. It is also an immutable fact that at no time has Murphy Farms possessed a duly-issued NPDES permit authorizing those discharges or any other discharges. Consequently, Murphy Farms has violated the Clean Water Act on at least the two occasions described in the complaint,[2] and the United States seeks civil penalties and an injunction prohibiting future discharges.

III. The United States' Second Claim for Relief

In the United States' second claim for relief, the United States alleges that the Defendants violated federal regulations by failing to apply for an NPDES permit for their facility — the Magnolia 4 Sow Farm. The United States seeks civil penalties and an injunction ordering the Defendants to apply for an NPDES Our

---

[2] The United States does anticipate taking discovery on the issue of whether or not there were in fact additional unpermitted discharges.

claim rests on a straightforward reading of the applicable laws and regulations.

First, the Defendants operate a point source that discharged pollutants into a navigable water of the United States. The Defendants have operated their facility since at least November 1996, which was the date of their first unpermitted discharge at issue in this case. The facility is a concentrated animal feeding operation. 40 C.F.R. § 122, Appendix B. Under Section 502(14) of the Clean Water Act, a concentrated animal feeding operation is a point source when "pollutants are or may be discharged" from it. 33 U.S.C. § 1362(14). The farm was a point source since November 26, 1996, if not earlier, when it discharged pollutants into Six Runs Tributary.

Second, the law requires "any person who discharges" pollutants from a point source to apply for an NPDES permit. 40 C.F.R. § 121.21(a). The Defendants had a duty to apply for a permit as of November 26, 1996, when their farm discharged manure into Six Runs Tributary. In continuing violation of this requirement, the Defendants have never applied for an NPDES permit for their facility.

## CONCLUSION

For the foregoing reasons, the United States' Motion to Intervene should be granted pursuant to Fed. R. Civ. P. 24(a).

Respectfully submitted,

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice

ADAM M. KUSHNER
Senior Counsel
PAUL WOLFTEICH
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
  Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Telephone:  (202) 514-4046
Facsimile:  (202) 514-2583


JANICE MCKENZIE COLE
United States Attorney
Eastern District of North Carolina

R.A. RENFER, JR.
Assistant United States Attorney
Chief, Civil Division
310 New Bern Ave., Suite 800,
Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919) 856-4821

OF COUNSEL:

ADAM SOWATZKA
Assistant Regional Counsel
U.S. Environmental Protection
  Agency -- Region IV
61 Forsyth Street
Atlanta, GA  30303

CIANNAT HOWETT
Attorney/Advisor
U.S. Environmental Protection
  Agency
Office of Enforcement and
  Compliance Assurance
Mail Code 2243A
401 M Street, S.W.
Washington, D.C.  20460

# Note:
## This Is Only A Partially Scanned Document.

## Please See Case File For Attachments, Exhibits, Affidavits Or Other Material Which Has Not Been Scanned