UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION



| | |
|---|---|
| AMERICAN CANOE ASSOCIATION, INC.,<br><br>    Plaintiff,<br><br>UNITED STATES OF AMERICA,<br><br>    Plaintiff/Intervenor,<br><br>v.<br><br>MURPHY FARMS, INC. d/b/a<br>MURPHY FAMILY FARMS, and<br>D.M. FARMS OF ROSE HILL, L.L.C.<br><br>    Defendants. | Civil Action No.<br>7:98-CV-4F(1) |
| PROFESSIONAL PADDLESPORTS<br>ASSOCIATION,<br><br>    Plaintiff,<br><br>v.<br><br>MURPHY FARMS, INC. d/b/a<br>MURPHY FAMILY FARMS, and<br>D.M. FARMS OF ROSE HILL, L.L.C.<br><br>    Defendants. | Civil Action No.<br>7:98-CV-19-F(1) |
| CONSERVATION COUNCIL OF NORTH<br>CAROLINA<br><br>    Plaintiff,<br><br>v.<br><br>MURPHY FARMS, INC. d/b/a<br>MURPHY FAMILY FARMS, and<br>D.M. FARMS OF ROSE HILL, L.L.C.<br><br>    Defendants. | Civil Action No.<br>7:98-CV-209-F(1) |

**COMPLAINT IN INTERVENTION**

The United States of America ("United States"), by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint in intervention and alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought pursuant to Sections 309(b) and (d) of the Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977 and the Water Quality Act of 1987 ("Clean Water Act"), 33 U.S.C. §§ 1319(b) and (d), for injunctive relief and the assessment of civil penalties against defendants Murphy Farms, Inc. d/b/a Murphy Family Farms, and D.M. Farms of Rose Hill, L.L.C. (hereinafter "Defendants").

2. This civil action also seeks declaratory relief, injunctive relief, and civil penalties against Defendants pursuant to Section 309(b) and (d) of the Clean Water Act, 33 U.S.C. § 1319(b) and (d), for violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for the unpermitted and illegal discharge of pollutants to waters of the United States.

## JURISDICTION, VENUE AND INTERVENTION

3. Authority to bring this action is vested in the Department of Justice by 28 U.S.C. §§ 516 and 519 and Sections 309 and 506 of the Clean Water Act, 33 U.S.C. §§ 1319 and 1366.

4. This Court has jurisdiction over the subject matter of

2

Case 7:98-cv-00004-F   Document 130   Filed 01/04/99   Page 2 of 16

this action under 28 U.S.C. §§ 1331, 1345 and 1355, and under Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

5. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), and Section 309(b) of the Clean Water Act, 33 U.S.C. §§ 1319(b), because it is the judicial district in which the Defendants are located, and in which the alleged violations occurred.

6. Authority to intervene as a matter of right in this citizens' suit brought pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365, is vested in the United States pursuant to Section 505(c)(2) of the Clean Water Act, 33 U.S.C. § 1365(c)(2).

## PARTIES

7. Upon information and belief, plaintiff American Canoe Association, Inc., is a nonprofit corporation organized under the laws of the State of New York, with its principal place of business in Springfield, Virginia.

8. Upon information and belief, plaintiff Professional Paddlesports Association is a nonprofit corporation organized under the laws of the State of Michigan, with its principal place of business in Butler, Kentucky.

9. Upon information and belief, plaintiff Conservation Council of North Carolina, is a nonprofit membership organization in the State of North Carolina.

10. Defendant D.M. Farms of Rose Hill, L.L.C., is a North

3

Carolina limited liability corporation engaged in the business of large-scale confined swine operations in North Carolina with its principal place of business at Rose Hill, North Carolina. D.M. Farms of Rose Hill, L.L.C., owns and operates the large-scale swine breeding operation on Merritt Road in Sampson County, North Carolina, from which Defendants discharged pollutants to waters of the United States.

11. D.M. Farms of Rose Hill, L.L.C., is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

12. Defendant Murphy Farms, Inc., is a North Carolina corporation doing business as Murphy Family Farms. Murphy Farms, Inc., is engaged in the business of large-scale confined swine operations in North Carolina with its principal place of business at Rose Hill, North Carolina. Murphy Farms, Inc., exercises control over the activities of D.M. Farms of Rose Hill, L.L.C.

13. Murphy Farms, Inc., is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

<u>STATUTORY REQUIREMENTS</u>

14. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" by any person into the navigable waters of the United States except in compliance with that section and, <u>inter alia</u>, an NPDES permit

4

Carolina limited liability corporation engaged in the business of large-scale confined swine operations in North Carolina with its principal place of business at Rose Hill, North Carolina. D.M. Farms of Rose Hill, L.L.C., owns and operates the large-scale swine breeding operation on Merritt Road in Sampson County, North Carolina, from which Defendants discharged pollutants to waters of the United States.

11. D.M. Farms of Rose Hill, L.L.C., is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

12. Defendant Murphy Farms, Inc., is a North Carolina corporation doing business as Murphy Family Farms. Murphy Farms, Inc., is engaged in the business of large-scale confined swine operations in North Carolina with its principal place of business at Rose Hill, North Carolina. Murphy Farms, Inc., exercises control over the activities of D.M. Farms of Rose Hill, L.L.C.

13. Murphy Farms, Inc., is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

<u>STATUTORY REQUIREMENTS</u>

14. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" by any person into the navigable waters of the United States except in compliance with that section and, <u>inter alia</u>, an NPDES permit

4

issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

15. Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), provides that the Administrator of EPA ("Administrator") may issue an NPDES permit which authorizes the discharge of any pollutant directly into navigable waters of the United States, but only in compliance with the applicable requirements of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and such other conditions as the Administrator determines are necessary to carry out the provisions of the Clean Water Act.

16. Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14), defines a "point source" to include a "concentrated animal feeding operation . . . from which pollutants are or may be discharged."

17. Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of, inter alia, Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or violates any permit condition or limitation implementing, inter alia, Sections 301, 308 or 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1318 or 1342.

18. Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), provides that any person who violates, inter alia,

5

Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or who violates any condition or limitation of an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $27,500 per day for each violation.

## GENERAL ALLEGATIONS

### Operations and Wastewater Treatment

19. Defendants own and operate the Magnolia 4 Sow Farm, a swine breeding operation, in Sampson County, North Carolina.

20. The Magnolia 4 Sow Farm is comprised of, inter alia, feedlots, two lagoons that are designed to receive swine waste, and spray fields. The Magnolia 4 Sow Farm has been in operation since at least April 1995.

21. The Magnolia 4 Sow Farm feedlot(s) house and maintain approximately 4,400 sow and an unknown number of piglets in total-confinement free-stall barns with slotted floors over waste flushing pits. Swine urine and fecal matter is flushed as needed from the floor pits of the feedlot(s) into a two-stage lagoon storage system.

22. Each year, D.M. Farms pumps approximately 26,814 tons of swine waste from Magnolia 4 Sow Farm lagoons through buried irrigation pipes to several spray fields that are part of the Magnolia 4 Sow Farm. D.M. Farms then sprays the swine waste onto Magnolia 4 Sow Farm approximately 81.5 acres of spray fields

6

through a "traveler" spray gun.

23. More than 2,500 swine, each weighing over 25 kilograms (approximately 55 pounds), are confined at the Magnolia 4 Sow Farm.

24. Swine at the Magnolia 4 Sow Farm are confined and fed or maintained for a total of 45 days or more in any 12-month period.

25. Crops have not been, and currently are not, sustained over any portion of the Magnolia 4 Sow Farm where animals are, and have been, confined.

26. 40 C.F.R. § 122.23(b)(1) defines "animal feeding operation" to mean a "lot or facility . . . where i) animals have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period, and ii) crops, vegetation forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility."

27. Magnolia 4 Sow Farm is an "animal feeding operation" as defined by 40 C.F.R. § 122.23(b)(1).

28. The swine waste collected by, transported through and applied to spray fields at the Magnolia 4 Sow Farm is a "pollutant" as that term is defined at Section 502(6) of the Clean Water Act, 33 U.S.C. § 1362(6).

29. Defendants have never applied for or obtained an NPDES

7

permit for discharge of swine waste or any other pollutant from the Magnolia 4 Sow Farm.

### Unpermitted Discharges

30. On at least two occasions, the Magnolia 4 Sow Farm has discharged swine waste to waters of the United States, including an unnamed tributary of Six Runs Creek ("the Six Runs Tributary"), a tributary of the Black River, which was not discharged through an NPDES permitted outfall and was not authorized under any NPDES permit.

31. The State of North Carolina has designated both Six Runs Creek and the Black River as "Outstanding Resources Waters" deserving of special regulatory protection. 15A N.C.A.C. 2B.0225.

32. The Six Runs Tributary, Six Runs Creek, and the Black River are "navigable waters" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

33. On or about November 25, 1996, representatives of the State of North Carolina inspected the Magnolia 4 Sow Farm and observed the discharge of swine waste from the Magnolia 4 Sow Farm spray fields into the Six Runs Tributary.

34. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on November 25, 1996, by representatives of the State of North Carolina indicates that discharge from the Magnolia 4 Sow Farm at the Six Runs Tributary contained 31,000 colony forming units ("CFU")/100 ml of fecal

coliform bacteria.

35. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on November 25, 1996, by representatives of the State of North Carolina indicates that Six Runs Tributary upstream of the points of discharge contained 140 CFU/100 ml of fecal coliform bacteria.

36. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on November 25, 1996, by representatives of the State of North Carolina indicates that 3,100 CFU/100 ml of fecal coliform bacteria was detected in the Six Runs Tributary downstream of the point of discharge from the Magnolia 4 Sow Farm.

37. On or about July 10, 1997, representatives of the State of North Carolina inspected the Magnolia 4 Sow Farm and observed swine waste in a field ditch of a spray field and running off into the Six Runs Tributary.

38. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on July 10, 1997, by representatives of the State of North Carolina indicates that a field ditch upstream of the point of discharge from the Magnolia 4 Sow Farm spray field contained 541 CFU/100 ml fecal coliform bacteria.

39. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on July 10, 1997, by

9

representatives of the State of North Carolina indicates that the same field ditch downstream of the point of discharge from the Magnolia 4 Sow Farm's spray field contained 61,261 CFU/100 ml of fecal coliform bacteria.

40. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on July 10, 1997, by the State of North Carolina indicates that Six Runs Tributary upstream of the point of discharge of the field ditch contained 400 CFU/100 ml of fecal coliform bacteria.

41. Laboratory analysis performed on behalf of the State of North Carolina of a sample taken on July 10, 1997, by the State of North Carolina indicates that Six Runs Tributary downstream of the point of discharge of the field ditch contained 154,545 CFU/100 ml of fecal coliform bacteria in the waterway.

42. The State of North Carolina estimates that the Magnolia 4 Sow Farm discharged approximately 13,500 gallons of swine waste to the Six Runs Tributary on July 10, 1997.

43. On or about May 21, 1998, representatives of EPA and the State of North Carolina inspected the Magnolia 4 Sow Farm and observed erosion of a outer berm wall extending from the wall into Six Runs Tributary. During the May 21, 1998 inspection, EPA and the State of North Carolina also observed the presence of gullies formed by erosion extending from a spray field to Six Runs Tributary.

44. Upon information and belief, the observations made during the May 21, 1998 inspection indicate past additional unpermitted discharges and the potential for unpermitted discharges in the future.

FIRST CLAIM FOR RELIEF

45. Paragraphs 1 through 44 are realleged and incorporated herein by reference.

46. Defendants have discharged, and may discharge in the future, swine wastes into navigable waters without the authorization of an NPDES permit from a point source(s).

47. The unpermitted discharges include, without limitation, the unpermitted discharges identified in paragraphs 30 through 44.

48. Each day of each unpermitted discharge of pollutants such as swine waste is a separate violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

49. Pursuant to Section 309(b) and (d) of the Clean Water Act, 33 U.S.C. § 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties not to exceed $27,500 per day for each violation.

50. Upon information and belief, unless enjoined by the Court, Defendants may continue to discharge pollutants to navigable waters without a permit in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

11

## SECOND CLAIM FOR RELIEF

51. Paragraphs 1 through 44 are realleged and incorporated herein by reference.

52. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of swine waste from the Magnolia 4 Sow Farm except in accordance with the terms and conditions of an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

53. Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), authorizes EPA to issue an NPDES permit which authorizes the discharge of pollutants from "point sources" to navigable waters.

54. Section 402(b) of the Act, 33 U.S.C. 1342(b), authorizes EPA to delegate its authority to issue NPDES permits to states. EPA has authorized the State of North Carolina to issue NPDES permits to point sources.

55. Section 502(14) of the Act, 33 U.S.C. § 1362(14), defines a "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any . . . concentrated animal feeding operation ["CAFO"] . . . from which pollutants are or may be discharged."

56. "Concentrated animal feeding operations are point sources subject to the NPDES permit program." 40 C.F.R. § 122.23.

57. Pursuant to 40 C.F.R. § 122.23 an "animal feeding

12

operation" is a CAFO if (a) there are more than 2,500 swine each weighing over 25 kilograms (approximately 55 pounds); (b) the swine are confined and fed or maintained for a total of 45 days or more in any 12-month period; and (c) crops are not sustained in the normal growing season over any portion of the lot or facility in which the swine are confined.

58. The State of North Carolina has adopted EPA's definition of a CAFO. 15A N.C.A.C. 2H.0122.

59. The Magnolia 4 Sow Farm is a CAFO as that term is defined by EPA and the State of North Carolina because it has more than 2,500 adult swine, the swine are confined and fed or maintained for 45 days or more in any 12-month period, and crops are not sustained in a normal growing season on any portion of the feedlot in which the swine are confined.

60. The Magnolia 4 Sow Farm was required, at least of the date of their first unpermitted discharge, to apply for an NPDES permit because it was a "person who discharges" pollutants within the meaning of 40 C.F.R. § 122.21(a).

61. The Defendants failure to apply for an NPDES permit constitutes a violation of the Clean Water Act for each day that Defendants failed to apply for such permit.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, requests that the Court enter judgment on behalf of the United States and

13

against Defendants as follows:

A.  Issue a declaratory judgment that Defendants have violated and continue to violate Sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342;

B. Permanently enjoin Defendants pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), as follows:

1.  Order Defendants to apply for an NPDES permit;

2.  Prohibit the discharge by Defendants of any pollutant from the Magnolia 4 Sow Farm to navigable waters;

3.  Order Defendants to institute corrective measures and undertake a program of compliance to achieve permanent, consistent compliance with the Clean Water Act, the regulations promulgated thereunder, and any NPDES permit issued for the Magnolia 4 Sow Farm.

C.  Order such other injunctive relief as the Court deems appropriate;

D.  Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), assess civil penalties against Defendants of up to $27,500 per day for each day of each violation of the Clean Water Act and the regulations promulgated thereunder;

14

E.  Award the United States its costs in this action; and

F.  Grant the United States such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ LJS

LOIS J. SCHIFFER
Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice


JANICE MCKENZIE COLE
United States Attorney
Eastern District of North Carolina

By: /s/ for
R.A. RENFER, JR.
Assistant United States Attorney
Chief, Civil Division
310 New Bern Ave., Suite 800,
Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919) 856-4821

/s/ AMK

ADAM M. KUSHNER
Senior Counsel
PAUL WOLFTEICH
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Benjamin Franklin Station
Washington, D.C. 20044

15

```
                              Telephone:  (202) 514-4046
                              Facsimile:  (202) 514-2583
```

OF COUNSEL:

ADAM SOWATZKA
Assistant Regional Counsel
U.S. Environmental Protection
  Agency -- Region IV
61 Forsyth Street
Atlanta, GA  30303

CIANNAT HOWETT
Attorney/Advisor
U.S. Environmental Protection
  Agency
Office of Enforcement and
  Compliance Assurance
Mail Code 2243A
401 M Street, S.W.
Washington, D.C.  20460